**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MUSIC CHOICE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:16-cv-00586-JRG-RSP |
| | § | |
| STINGRAY DIGITAL GROUP INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) Plaintiff Music Choice's Daubert Motion to Strike Deposition Testimony of Defendants' Expert Dr. Michael Shamos for Presenting Untimely and Undisclosed Opinions ("Motion to Strike") (Dkt. No. 188) and (2) Music Choice's Alternative Motion for Leave to Serve the Supplemental Expert Report of Samuel Russ, Ph.D ("Motion for Leave") (Dkt. No. 230).

Music Choice raises two separate arguments within its Motion to Strike. Music Choice first seeks to exclude Dr. Shamos' opinion that "the Audio Engine and StillPic Generator components of the accused Ubiquicast machine purportedly send data between them via a shared RAM memory, which according to Dr. Shamos, does not qualify as the 'transmission' of data as recited in '245 claims 10 and 15." (Dkt. No. 188 at 5.) Music Choice also seeks to exclude Dr. Shamos' "invalidity opinion that Rothman made MP4 technology obvious." (Dkt. No. 188 at 6.) Music Choice filed its Motion for Leave seeking to file a supplemental report to address these opinions in the event that Music Choice's Motion to Strike is denied. (Dkt. No. 230.)

The Court will first address Music Choice's argument regarding the allegedly new infringement theory and then address Music Choice's argument regarding the allegedly new invalidity theory. Finally, the Court will address whether the Motion for Leave should be granted

to allow Music Choice to supplement its reports to address both the infringement and the invalidity theory.

## I. INFRINGEMENT THEORY REGARDING COMMON MEMORY

Claim 10 is representative of claim 15 here, and claim 10 is dependent upon claim 1. Claim 1 requires:

1. A method for providing a visual complement to an audio stream, comprising:
   transmitting, from a first transmission system to a second transmission system, audio data corresponding to a selected song; and
   ***transmitting a data packet that was generated using an identifier identifying the selected song***, wherein the data packet includes a media asset identifier identifying a media asset and further includes song information associated with the selected song, the song information comprising the title of the song and the name of the artist who recorded the song, wherein
   the step of transmitting the data packet comprises transmitting the data packet to a receiving system that is configured such that, in response to receiving the data packet, the receiving system automatically generates a video image using the information included in the data packet and automatically outputs the generated video image such that it is received by a display device that is operable to display the video image to a user of the display device without the user having to select a menu item, and
   the generated video image includes the song information comprising the title of the song and the name of the artist.

(emphasis added). Claim 10 adds the requirement that "the video image is encoded according to a Moving Pictures Experts Group (MPEG) standard."

Within an exhibit to Dr. Shamos' expert report, Dr. Shamos stated that "[t]he StillPic Generator and the Audio engine are the same piece of software. Thus one does not transmit to the other and the StillPic Generator virtual machine cannot act as 'receiving system' for the Audio Engine." (Dkt. No. 188-5 at 12 (using ECF page number).) Elsewhere within the same report, Dr. Shamos stated that "Mr. Lavigne testified that the StillPic Generator and the Audio engine are the same piece of software. Thus one does not transmit to the other and the StillPic Generator virtual

machine cannot act as 'receiving system' for the Audio Engine." (*Id*. at 10 (using ECF page numbers) (internal citations omitted).)

At Dr. Shamos' deposition, Dr. Shamos stated that, "if the Galaxie StillPic generator deposits data in RAM, and the Ubiquicast audio engine retrieves it from RAM, there is no transmission." (Dkt. No. 188-6 at 58:1–4.) He stated that "[s]oftware components running on the same box can't transmit to one another . . . because there is no transmission channel." (*Id*. at 58:7–10.) Dr. Shamos also opined that, "[i]f I put data in RAM and another module of the software takes it out of RAM, there is no transmission." (*Id*. at 58:15–17.)

Music Choice argues that the Dr. Shamos only opines in his expert report "that there was no 'transmission' of data packets between the Audio Engine and StillPic Generator because the two supposedly were 'the same piece of software.'" (Dkt. No. 188 at 5.) Based on Dr. Shamos' statements during his deposition, Music Choice argues that Dr. Shamos pivoted his non-infringement theory to now argue that there is no transmission "because data is purportedly sent between the StillPic Generator and Audio Engine via shared RAM or common memory." (*Id*. at 6.) Music Choice also argues that the terms "RAM" and "common memory" do not appear in the non-infringement report. (*Id*.)

After consideration, the Court **DENIES** Music Choice's Motion to Strike for allegedly new infringement theory regarding common memory because the Court concludes that Dr. Shamos' testimony falls within the scope of his expert report. While Dr. Shamos does not explicitly discuss a common memory non-infringement theory within his report, Dr. Shamos does discuss a non-infringement theory that no transmission occurs as required by the claims because the Audio Engine and StillPic Generator are part of the same software program. Dr. Shamos statements regarding a common memory merely elaborate on the already existing opinions within the expert

non-infringement report. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011) ("Although his testimony uses different words than the expert report, it was a reasonable elaboration of the opinion disclosed in the report."); *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 2013 WL 12076934, at *3 (W.D. Tex. Nov. 8, 2013) (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)).

## II.    INVALIDITY THEORY REGARDING STREAMING VIDEO USING MP4

The Court notes that Dr. Shamos included within his invalidity charts the following statement "Rothman expressly discloses MPEG (MP3) . . . . MP3 is an audio codec. However, Rothman discloses that the materials provided can also be streamed video. Rothman was filed on April 27, 2001, at which time it was conventional to stream videos using MPEG." (Dkt. No. 213-6 at 13.) Thus, the critical issue here is whether this statement and other statements within the Dr. Shamos' report and invalidity charts are sufficient to provide notice of a theory that Rothman made use of MP4 technology obvious. The Court concludes that Dr. Shamos sufficiently disclosed this theory, so the Court denies this portion of Music Choice's Motion to Strike.

At his deposition, Dr. Shamos stated that, "wanting to know about MP3, when MP4 came along it would be completely obvious to use that as one of the streaming — one of the formats that could be used with the streaming application." (Dkt. No. 188-6 at 164:4–7.) Dr. Shamos later stated that "[t]here is not an express reference to MP4 in my Rothman portion of my report." (Dkt. No. 188-6 at 165:3–4.) Music Choice contends that Dr. Shamos' report fails to explicitly or implicitly discuss MP4 in relation to the Rothman reference. (Dkt. No. 188 at 3 (citing Dkt. No. 188-1 at ¶ 4).)

Stingray responded by arguing (1) that "Dr. Shamos' testimony regarding MP4 technology is merely an elaboration on the opinions in his report" and (2) that the testimony "was given in

response to opposing counsel's deposition questioning." (Dkt. No. 213 at 9.) Stingray argues that Dr. Shamos report states that "[i]t is apparent from the development of the prior art that the following elements/limitations were conventional at the time of the earliest filing date of the Asserted Patents: . . . MPEG encoding." (Dkt. No. 213-4 at ¶ 257.) Stingray also points to the report's discussion of several other references showing that MPEG-4 video codecs were disclosed by other prior-art references. (Dkt. No. 213 at 3 n.2 (citing Dkt. No. 213-4 at ¶¶ 133, 169–71, 182–85, 206, 217–18, 230, 244, 250).)

After reviewing the relevant portions of Dr. Shamos' report and the relevant portions of the invalidity charts, the Court concludes that Dr. Shamos sufficiently disclosed the theory that MP4 technology was rendered obvious by Rothman. Providing notice to opposing counsel of the expert's proposed testimony is one of the primary purposes of Rule 26(a)(2)(B). *Effective Expl., LLC v. BlueStone Nat. Res. II, LLC*, No. 216-CV-00607-JRG-RSP, 2017 WL 5895164, at *3 (E.D. Tex. Nov. 13, 2017), *report and recommendation adopted*, No. 2:16-CV-00607-JRG-RSP, 2017 WL 5890082 (E.D. Tex. Nov. 29, 2017), *appeal dismissed*, No. 2018-1365, 2018 WL 3244574 (Fed. Cir. Apr. 26, 2018) (citing *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)). The Court concludes that providing notice is the primary concern in this case. The relevant portions of the report and invalidity charts sufficiently provide notice of this theory. The invalidity charts state

> Rothman expressly discloses MPEG (MP3) . . . . MP3 is an audio codec. However, Rothman discloses that the materials provided can also be streamed video. Rothman was filed on April 27, 2001, at which time it was conventional to stream videos using MPEG.

(Dkt. No. 213-6 at 13.) Dr. Shamos' discussion of other references makes clear that he considered MP4 or MPEG-4 to be one form of MPEG that was used to stream videos alongside MPEG-2 and

MPEG-7. (*See*, *e.g.*, Dkt. No. 213-4 at ¶ 170 (discussing Mackintosh reference and the use of a "MPEG-4 video codec"); *see also id.* at ¶¶ 133, 169, 171, 182–85, 206, 217–18, 230, 244, 250.)

## III.    SUPPLEMENTAL EXPERT REPORT

Because the Court considers the foregoing issues sufficiently close, and in order to mitigate any prejudice to Plaintiff, the Court will **GRANT** Music Choice's Motion for Leave to supplement its expert report with respect to Dr. Shamos' specific non-infringement theory that no transmission occurs because "the Audio Engine and StillPic Generator components of the accused Ubiquicast machine purportedly send data between them via a shared RAM memory," and the allegedly new invalidity theory regarding MP4 technology. The supplemental report of Dr. Russ will be strictly limited to that scope and must be served by no later than noon on Monday, November 11, 2019. Any issues regarding the scope of this report may be raised at the November 12 pretrial conference.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Music Choice's Motion to Strike and **GRANTS** Music Choice's Motion for Leave.

**SIGNED this 5th day of November, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE