**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MUSIC CHOICE,<br><br>   *Plaintiff*,<br><br>v.<br><br>STINGRAY DIGITAL GROUP INC. and STINGRAY MUSIC, USA, INC.,<br><br>   *Defendants*. | § § § § § § § § § § | Case No. 2:16-cv-00586-JRG-RSP<br>**LEAD CASE** |
| STINGRAY MUSIC, USA, INC,<br><br>   *Plaintiff*,<br><br>v.<br><br>MUSIC CHOICE,<br><br>   *Defendant*. | § § § § § § § § § | Case No. 2:16-cv-00964-JRG-RSP<br>**CONSOLIDATED CASE** |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Stingray Digital Group Inc.'s and Defendant Stingray Music, USA, Inc.'s (collectively "Stingray") Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 9,351,045 ("Motion"). (Dkt. No. 190.) After consideration of this Motion, the Court concludes that Stingray waived any argument that the prosecution history requires some meaning other than the plain and ordinary meaning of the relevant claim language. Applying the plain and ordinary meaning, the Court concludes that the language "while the first client system is playing the song" modifies only "enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier" and not the remainder of the claim element. Because Stingray has not sufficiently shown that it is entitled to summary judgment when this construction is applied, the Court recommends that Stingray's Motion be **DENIED**.

I.      APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

Determining whether a product or method literally infringes a patent is a two-step process. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1319 (Fed. Cir. 2012).

First, the Court must determine the proper construction of the asserted claims, which is a matter of law. *Id.* This step was largely completed in the Court's Claim Construction Order. (Dkt. No. 145.) At the second step, the finder of fact must determine whether the asserted claim, as properly construed, "reads" on the product or method. *Id.* In other words, "a patentee must supply sufficient evidence to prove that the accused product or process contains . . . every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

## II. BACKGROUND

While Plaintiff Music Choice alleges that Stingray infringes multiple patents, Stingray's Motion is only directed to Music Choice's infringement allegations for U.S. Patent No. 9,351,045 ("'045 Patent"). The '045 Patent is entitled "Systems and Methods for Providing a Broadcast Entertainment Service and an On-Demand Entertainment Service." '045 Patent at [54]. Music Choice alleges infringement of claims 16, 17, 19, and 20 of the '045 Patent. (Dkt. No. 287 at 4.) Claim 16 is an independent claim, and claims 17, 19, and 20 each depend upon independent claim 16, and the Court concludes that independent claim 16 is representative of the asserted claims for the '045 Patent for the purposes of resolving this Motion. Independent claim 16 provides:

> 16. A video-on-demand system, the video on demand system comprising:
>   a transmitter;
>   a receiver; and
>   a computer system coupled to the transmitter and the receiver, wherein the computer system is configured to perform a method comprising:
>     selecting a song for one of a plurality of music channels, the one of the plurality of music channels being associated with a genre of music;
>     transmitting simultaneously to a plurality of client systems audio data corresponding to the selected song, wherein each of the plurality of client systems is configured to use the audio data to play the song so that each user of each of the plurality of client systems can listen to the song, and the plurality of client systems includes a first client system and a second client system;

> while transmitting the audio data to the plurality of client systems, transmitting to the first client system a video identifier identifying a video;
> while the first client system is playing the song *enabling* the user of the first client system to indicate that the user desires to view the video identified by the video identifier, and then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, *transmitting* to the first client system video data corresponding to the video identified by the video identifier.

(emphasis added).

### III.   ANALYSIS

The critical issue for the present motion is the proper construction for the final clause of claim 16. Stingray argues that the language "while the first client system is playing the song" modifies both the requirement of "*enabling* the user of the first client system to indicate that the user desires to view the video identified by the video identifier" and "then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, *transmitting* to the first client system video data corresponding to the video identified by the video identifier."[1] Music Choice argues that the language "while the first client system is playing the song" modifies only the enabling requirement and not the transmitting requirement.

The Court concludes that Stingray has waived any claim construction argument based on prosecution history for this term. Thus, where claim language has not otherwise been construed, the plain and ordinary meaning of the claims as issued controls. However, even considering the prosecution history argument, the Court would reach the same result. Based on the plain and ordinary meaning of the claims, the Court concludes that the limitation "while the first client

---

[1] The Court will refer to these requirements as the enabling requirement and the transmitting requirement for the sake of brevity.

system is playing the song" only modifies the language "*enabling* the user of the first client system to indicate that the user desires to view the video identified by the video identifier" and that the clause "while the first client system is playing the song" does not modify any subsequent portion of the claim language such as the requirement of "*transmitting* to the first client system video data corresponding to the video identified by the video identifier."

### a. Stingray waived its current claim construction position

Stingray raises little authority or argument within its Motion to show that it did not waive its current claim construction position. Music Choice timely raised waiver in its response. (Dkt. No. 220 at 9–13.) Music Choice argues that the claims should be given their ordinary meaning because Stingray waived any claim construction argument by not raising their proposed construction during the claim construction process. (*Id*. at 9–10.) Music Choice further argues that Stingray's proposed constructions contradict previous invalidity positions taken by Stingray during these proceedings and during the IPR proceedings before the PTAB. (Dkt. No. 220 at 11 (citing *Symantec Corp. v. Computer Assocs. Int'l, Inc*., 522 F.3d 1279, 1298 (Fed. Cir. 2008) ("[T]he same construction governs for validity determinations as for infringement determinations.")).)

In Stingray's Reply, Stingray argues that this Court has previously engaged in supplemental claim construction at the summary judgment stage to resolve claim construction disputes. (Dkt. No. 243 at 5 (citing *Intellectual Ventures II LLC v. Bitco Gen. Ins. Corp*., 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019); *Cioffi v. Google, Inc*., 2:13-CV-00103-JRG-RSP, 2017 WL 275386, at *5 (E.D. Tex. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 235011 (E.D. Tex. Jan. 19, 2017); *Creative Internet Advert. Corp. v. Yahoo! Inc*., 2009 WL 2382136, at *6-7 (E.D. Tex. July 30, 2009).).) With respect to Music Choice's arguments that Stingray is taking

inconsistent positions, Stingray argues that "'attorney arguments are not relevant intrinsic or extrinsic evidence' and, thus, are irrelevant to the proper construction of the On-Demand Limitation." (*Id*. (quoting *Va. Innovation Scis., Inc. v. Samsung Elecs. Co*., 614 Fed. Appx. 503, 511 (Fed. Cir. 2015)).)

The Court concludes that Stingray has waived its claim construction argument. The Court reaches this conclusion based on Stingray's failure to raise this argument during claim construction. Furthermore, Stingray raised arguments before the PTAB that are consistent with Music Choice's construction and that are inconsistent with Stingray's newly proposed construction, and this further supports the Court's conclusion that Stingray waived its new claim construction positions.

This Court has stated that a "failure to timely raise . . . claim construction arguments should ordinarily result in waiver of the arguments." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd*., No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C*., 482 F.3d 1347, 1356 (Fed. Cir. 2007)). This Court has denied requests for additional claim construction where a party "could have made . . . arguments during the claim construction phase of the case but did not . . . ." *Id*. "[W]here a court has prescribed specific claim construction procedures and the parties have proceeded towards trial in reliance thereon, the court has discretion to preclude parties from injecting new claim construction theories on the eve of trial." *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp*., No. 6:18-CV-00298-JRG, 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019) (quoting *Battcher Indus., Inc. v. Bunzl USA, Inc*., 661 F.3d 629, 640–41 (Fed. Cir. 2011)) (internal marks omitted). The Federal Circuit has upheld district courts' findings of waiver of claim construction arguments in several instances similar to the present situation. *See, e.g., Cent. Admixture Pharmacy*

*Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007); *SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005).

Here, the Court conducted a claim construction hearing on June 12, 2017, and the parties filed briefing for those proceedings in accordance with the Local Patent Rules. (Dkt. No. 139.) The case was stayed on December 12, 2017, pending the resolution of IPR proceedings. (Dkt. No. 171.) The parties eventually filed a joint status report regarding the outcomes of the IPR proceedings on November 24, 2018, and the case resumed after that date. (Dkt. No. 173.) Stingray did not raise this argument during claim construction proceedings, and Music Choice contends (and Stingray does not refute) that Stingray did not raise the claim construction argument before the close of discovery in the case. The information relied upon by Stingray for this argument was present in the prosecution history and available to Stingray at the time of claim construction. Stingray does not offer any explanation within its briefing for why this argument was not raised at an earlier time. The Court therefore concludes that Stingray "could have made [these] arguments during the claim construction phase of the case but did not. . . ." *See Ericsson*, 2017 WL 5137401, at *15. Thus, the request for additional claim construction may be denied.

Stingray also raised arguments before the PTAB that are consistent with Music Choice's construction and that are inconsistent with Stingray's newly proposed construction, and this further supports the Court's conclusion that Stingray waived its new claim construction positions. Music Choice argues that Stingray relied upon a construction similar to Music Choice's construction during IPR proceedings. (Dkt. No. 220 at 11–13.) For example, Stingray asserted that a prior art reference called Hudson "discloses automatically pausing the transmission and playback of 'primary content' when a user clicks an interface link" and that "the video identified by that link is transmitted and played for the user instead." (Dkt. No. 220-9 at 30–31, 54.) This contradicts the

current construction proposed by Stingray, and allowing Stingray to argue under one position during PTAB proceedings for issues of invalidity and then argue a contradictory position in this Court for issues of infringement would be unfair to Music Choice. "[T]he same construction governs for validity determinations as for infringement determinations." *Symantec Corp. v. Computer Assocs. Int'l, Inc*., 522 F.3d 1279, 1298 (Fed. Cir. 2008).

Because the Court concludes that Music Choice has waived this claim construction argument, the claim should be given its plain and ordinary meaning. *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd*., No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *17 (E.D. Tex. Nov. 4, 2017) ("Claim terms that are not construed have their ordinary meaning."); *see Broadcom Corp. v. Qualcomm Inc*., 543 F.3d 683, 696 (Fed. Cir. 2008) ("The term 'selectively couples' was not construed by the district court because the parties agreed to let the ordinary meaning control."). However, the Court will construe the claim language to resolve any dispute as to the plain and ordinary meaning of the claim language.

### b. Plain and ordinary meaning of the claim language

Even considering Stingray's arguments regarding the prosecution history of the patent-in-suit, the Court concludes that Stingray has not sufficiently shown that the claims should be construed as Stingray has proposed.

### i. Stingray's Arguments

Stingray argues that, at the time of allowance, the final clause of claim 16 stated that

> while the first client system is playing the song, (a) ***enabling*** the user of the first client system to indicate that the user desires to view the video identified by the video identifier and then (b) in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, ***transmitting*** to the first client

> system video data corresponding to the video identified by the video identifier.

(Dkt. No. 190 at 5 (citing Dkt. No. 190-4 at 6 (using ECF page number))) (emphasis added).) Stingray argues that this claim language shows that the language "while the first client system is playing the song" applies to both the enabling and transmitting requirements. (*Id*. at 10.) Stingray asserts that, "as made clear by the placement of the comma after the initial 'while' clause, this limitation required the performance of steps (a) and (b) 'while the first client system is playing the song.'" (*Id*.) After allowance, the applicant filed an amendment to the claims, changing the final clause of claim 16 as shown below.

| **Claim language at time of allowance** | **Claim language at time of issuance, with amendments noted[2]** |
|---|---|
| while the first client system is playing the song, (a) enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier and then (b) in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier. | while the first client system is playing the song[[, (a)]] enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier, and [[(b)]] then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier. |

Stingray argues that these amendments were made after the notice of allowance and that pursuant to 37 C.F.R. § 1.312, amendments may not be made as a matter of right and may only be made "on the recommendation of the primary examiner." (Dkt. No. 190 at 10–11.) Stingray argues that, while other amendments may be made after a Notice of Allowance has been mailed with the approval of the supervisory patent examiner, the primary examiner only has authority to enter amendments submitted after Notice of Allowance of an application which embody formal matters

---

[2] Double brackets are used to indicate deletions. Underlining is used to indicate insertions.

in a claim without changing the scope thereof. (*Id*. at 11 (citing MPEP § 714.16).) Stingray also cites other language from the MPEP:

> [for] amendments affecting the disclosure, the scope of any claim, or that add a claim, the remarks accompanying the amendment must fully and clearly state the reasons on which reliance is placed to show:
> (A) why the amendment is needed;
> (B) why the proposed amended or new claims require no additional search or examination;
> (C) why the claims are patentable; and
> (D) why they were not presented earlier.

(*Id*. (citing MPEP § 714.16).) Stingray argues that an amendment after allowance that changes the scope of the claims would be improper and that, because of this, the claims as issued must have the same scope as the claims at the time of allowance. (*Id*.)

Stingray also argues that the Federal Circuit and other district courts have not relied upon "eleventh-hour amendments" such as the ones presented here. (Dkt. No. 190 at 11–13 (citing *Genzyme Corp. v. Transkaryotic Therapies, Inc*., 346 F.3d 1094, 1103 (Fed. Cir. 2003); *Asetek Holdings, Inc. v. CoolIT Sys*., 2013 U.S. Dist. LEXIS 170446, at *12–19 (N.D. Cal. 2013)).)

### ii. Law on Claim Construction

The general rule is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

"[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)).

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the

specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

While the general rule is that a claim should be construed according to its ordinary and accustomed meaning, an exception exists where the applicant has disavowed the full scope of the claim term. *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### iii. Analysis

First, the Court notes that the claim language at the time of issuance generally controls, not the claim language at the time of allowance. *See, e.g.*, *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1302 (Fed. Cir. 2005) (concluding that, when dealing with issues where the claims as issued possess a printing error, the language within the claims as issued controls and that the district court may "correct an error only if the error is evident from the face of the patent"). Interpreting the language of claim 16 as issued, the language "while the first client system is playing the song" modifies only the enabling requirement:

> <span style="color:red">while the first client system is playing the song enabling the user of the first client system to indicate that the user desires to view the</span>

> video identified by the video identifier, and then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier.

Because the language "while the first client system is playing the song" is not separated by any comma from the enabling requirement and because the claim includes a comma to separate this first portion of the claim from the remainder of the claim (", and then"), this suggests that the language "while the first client system is playing the song" modifies only the enabling requirement and that the language does not modify the transmitting requirement. More importantly, the use of the words "and then" in front of the transmitting requirement suggests that it is performed at a later point in time.

The specification provides support for this interpretation. The specification disclosed embodiments where, upon the message comprising information indicating that the user desires to view the video, the system ceases transmitting the original video and begins transmitting the newly selected video. ('045 Patent at 8:32–42, 8:50–57.) While the claims are not necessarily limited to the embodiments disclosed within the specification, Stingray has not pointed to any embodiments or other evidence from the specification to support its construction. While these embodiments by themselves are insufficient to mandate that Music Choice's construction be used, they still lend support to Music Choice's interpretation of the claims.

Stingray argues that (1) claim 16 as allowed suggests that the language "while the first client system is playing the song" applies to both the enabling and transmitting requirements; (2) the actions of the applicant and examiner actions show that they both interpreted the amendments after allowance to not change the scope of the claims; and (3) therefore, for the claims as issued, the language "while the first client system is playing the song" applies to both the enabling and

transmitting requirements so that the scope of the claims as issued remains the same as the scope of the claims at the time of allowance.[3]

Stingray's logic could just as easily be used to suggest that the applicant and the examiner both interpreted the claims as allowed similar to Music Choice's proposed construction. As discussed above, the claim language as issued and the specification tend to support Music Choice's construction. Assuming that the examiner and the applicant both interpreted the amendments after allowance to not change the scope of the claims, this suggests that the examiner and the applicant may have interpreted both the claims as allowed and the claims as issued in a manner that was consistent with Music Choice's proposed construction. This shows the lack of clarity of the prosecution history here and shows that Stingray's prosecution history argument is of limited value in interpreting the claims.

Even interpreting the claim language at the time of allowance, Stingray has not persuasively shown that language "while the first client system is playing the song" applies to the enabling requirement and the transmitting requirement, as the following table shows:

| Claim language at time of allowance | Claim language at time of issuance, with amendments noted[4] |
|---|---|
| while the first client system is playing the song, (a) enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier and then (b) in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier. | while the first client system is playing the song[[, (a)]] enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier, and [[(b)]] then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier. |

---

[3] Stingray bases its argument largely on the Federal Circuit's decision in *Genzyme Corp. v. Transkaryotic Therapies, Inc.*, which the Court will address further below. 346 F.3d 1094 (Fed. Cir. 2003).
[4] Double brackets are used to indicate deletions. Underlining is used to indicate insertions.

This language at the time of allowance does not clearly mandate that the enabling requirement and the transmitting requirement both occur "while the first client system is playing the song." By including the language "and then" to separate the two requirements, the applicant indicated that the transmitting requirement occurs after the enabling requirement. Further, as discussed above, the specification included embodiments that fit Music Choice's interpretation of the claims and does not include any embodiments fitting Stingray's interpretation. ('045 Patent at 8:32–42, 8:50–57.) Interpreting the plain meaning of the claim as allowed in light of the specification, Music Choice's construction is a plausible one, making it far from clear that the scope of the claims has been altered by the amendment after allowance.

Stingray's theory largely appears to be based on the Federal Circuit's reasoning in *Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094 (Fed. Cir. 2003). However, the Court concludes that *Genzyme* is distinguishable. In *Genzyme*, the issue was whether the trial court erred in construing "chromosomally integrated" to require the introduction of exogenous α-Gal A sequences into the host cell. *Id*. at 1098–1104. The Federal Circuit concluded that the trial court did not err in its construction, disregarding "eleventh-hour amendments" made after the notice of allowance and stating that "[a] clarifying amendment at the last moment could not negate [the] extensive public record." *Id*. at 1103, 1104. Accordingly, the court relied heavily upon the claim language at the time of allowance and concluded that the trial court did not err in construing the term "chromosomally integrated" similar to the claim language at the time of allowance so that it required the introduction of exogenous α-Gal A sequences into the host cell. In reaching this conclusion, the Court emphasized the "extensive public record" and stated that "the deposit requirement, the specification, the applicant's arguments to distinguish prior art, the examiner's responses, and Dr. Mellman's declaration repeatedly stressed that the invention envisioned

insertion of an exogenous gene sequence into a host cell." *Id.* at 1103; *see also id.* at 1099 ("Throughout the '804 patent specification, the applicant consistently uses the term 'integrated' to refer to a foreign gene inserted into a host cell transform.").[5] Further, in *Genzyme*, the disputed term was presented to the Court for construction, but here, Stingray has not raised these issues for construction. *See id.* at 1096–97.

Stingray points out the Federal Circuit's statement that the "[m]ore important" reason for their decision was that the examiner could not accept an after-final amendment that broadened the scope of the claims. (Dkt. No. 243 at 4 (citing *Genzyme*, 346 F.3d at 1103).) Because of this, the Federal Circuit concluded that the "examiner felt this last-minute change did not alter the scope of the claims." *Genzyme*, 346 F.3d at 1103. However, the Court concludes that *Genzyme* is distinguishable due to the "extensive public record" in that case and because Stingray has not persuasively shown that the scope of the claims changed as a result of the amendments after allowance. Because the evidence presented in this case does not persuasively show that the original claims as allowed and interpreted in light of the specification matches up with Stingray's proposed construction, the Court will not apply the logic of Genzyme to reach Stingray's proposed construction for the claims as issued.[6]

Consequently, the Court concludes that, applying the plain meaning of the claims, the language "while the first client system is playing the song" only modifies the enabling requirement and not the transmitting requirement.

---

[5] Based on the examiner's statements that the deposit of recombinant vector encoding α-Gal A was essential to the claimed invention, and the applicant's subsequent deposit of that vector without any argument that such a vector was not essential, the Court concluded that the applicant effectively conceded that the vector was essential and that this prosecution history shows the necessity of the deposited vector sequences to the patent claims. *Id.* at 1101.

[6] Stingray also relies upon *Asetek Holdings, Inc. v. Coolit Sys.*, 2013 U.S. Dist. LEXIS 170446, at *17–18 (N.D. Cal, Dec. 3, 2013). However, the Court concludes that that case is distinguishable for the same reasons that *Genzyme* is distinguishable.

### c. Stingray has not met its burden for summary judgment when the construction discussed above is used

Stingray focuses its arguments on the claim construction issue discussed above. However, Stingray has not provided any argument that summary judgment would be appropriate under the construction provided above. Based on the Court's construction for claim 16, the Court concludes that Stingray has not met its burden of showing that no reasonable jury could find infringement using the construction provided above. The Court therefore recommends that Stingray's Motion be **DENIED**.

## IV. CONCLUSION

The Court therefore concludes that Stingray waived its claim construction argument that both the enabling and transmitting requirements must be performed "while the first client system is playing the song," so the claims should be given their plain and ordinary meaning unless otherwise construed during claim construction. Applying the plain and ordinary meaning of the claim, the Court concludes that only the enabling requirement must be performed "while the first client system is playing the song." Stingray has not met its burden of showing that summary judgment is appropriate under this construction, so the Court recommends that Stingray's Motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and

Recommendation **must be filed** in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 19th day of November, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE