# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MUSIC CHOICE, *Plaintiff*, v. STINGRAY DIGITAL GROUP INC. and STINGRAY MUSIC, USA, INC., *Defendants*. | § § § § § § § § § § | Case No. 2:16-cv-00586-JRG-RSP LEAD CASE |
| STINGRAY MUSIC, USA, INC, *Plaintiff*, v. MUSIC CHOICE, *Defendant*. | § § § § § § § § | Case No. 2:16-cv-00964-JRG-RSP CONSOLIDATED CASE |

## REPORT AND RECOMMENDATION

Defendants Stingray Group Inc. and Stingray Music USA, Inc. (collectively "Stingray") filed a motion for judgment on the pleadings (Dkt. No. 180). Within this motion, Stingray contends that each of the asserted claims capture only abstract ideas and that they are each invalid under 35 U.S.C. § 101. (*Id.*) Plaintiff Music Choice filed a motion for partial summary judgment, and this included a cross-motion for summary judgment that Stingray did not present sufficient evidence to show that the asserted claims are invalid under 35 U.S.C. § 101.[1] (Dkt. No. 189.)

The Parties have indicated that Music Choice is asserting claim 8 of U.S. Patent No. 7,320,025 ("'025 Patent"), claims 16, 17, 19, and 20 of U.S. Patent No. 9,351,045 ("'045 Patent"),

---

[1] While Music Choice's Motion for Partial Summary Judgment included other arguments, the Court will only focus on the arguments directed to § 101 within this Report and Recommendation. Other arguments within the Motion for Partial Summary Judgment were addressed in a previous Report and Recommendation (Dkt. No. 321).

and claims 10 and 15 of U.S. Patent No. 9,357,245 ("'245 Patent"). (Dkt. No. 287 at ¶ 19.) Stingray raises § 101 challenges for all of the remaining patent claims. (Dkt. No. 180.)

The Court concludes that each of the remaining asserted claims are not directed to an abstract idea at *Alice* Step One. Because the Court resolves the *Alice* inquiry at Step One, the Court need not proceed to *Alice* Step Two. Thus, the Court recommends that Music Choice's cross-motion be **GRANTED** and that Stingray's motion for judgment on the pleadings be **DENIED**.

## I. APPLICABLE LAW

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court therefore instructs courts to distinguish between claims that set forth patent ineligible subject matter and those that "integrate the building blocks into something more." *Id.*

The Federal Circuit provided a two-step framework for analyzing whether claims at issue claim patent-eligible subject matter. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Courts first determine whether the claims at issue are directed to a patent-ineligible concept. *Id.* (quoting *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–78 (2012))). In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (omission in original). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish*, 822 F.3d at

1335. If the claim is directed to an abstract idea at *Alice* Step One, courts move to the second step of the inquiry and consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent eligible invention. *Enfish*, 822 F.3d at 1334 (quoting *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 78)).

If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

The Court will first address the '245 Patent claims and will then address the '025 and '045 Patent claims together below.

## II.     '245 PATENT CLAIMS

### a. Background

The '245 Patent is entitled "System and method for providing an interactive, visual complement to an audio program." '245 Patent at [54]. The abstract of the '245 Patent states

> [a] system and method for providing an interactive, visual complement to one or more audio programs. In one aspect, the system comprises an audio subsystem for generating an audio signal corresponding to a sound recording. The system also comprises a video subsystem for generating a video image specification based, at least in part, on the sound recording. In one aspect, the audio

> signal and video image specification are transmitted to an audio/video signal transmission system. The transmission system receives the video image specification and generates a video signal that conforms to the video image specification. The video signal and the audio signal are transmitted to at least one consumer receiver. In this way, the system provides a visual complement to an audio program.

*Id*. at [57]. The asserted claims of the '245 Patent are claims 10 and 15. Claims 10 and 15 are dependent claims that depend upon independent claims 1 and 12 respectively. For the purposes of resolving these motions, the Court concludes that dependent claim 10 is representative of claim 15. Independent claim 1 requires

> 1. A method for providing a visual complement to an audio stream, comprising:
>     transmitting, from a first transmission system to a second transmission system, audio data corresponding to a selected song; and
>     transmitting a data packet that was generated using an identifier identifying the selected song, wherein the data packet includes a media asset identifier identifying a media asset and further includes song information associated with the selected song, the song information comprising the title of the song and the name of the artist who recorded the song, wherein
>     the step of transmitting the data packet comprises transmitting the data packet to a receiving system that is configured such that, in response to receiving the data packet, the receiving system automatically generates a video image using the information included in the data packet and automatically outputs the generated video image such that it is received by a display device that is operable to display the video image to a user of the display device without the user having to select a menu item, and
>     the generated video image includes the song information comprising the title of the song and the name of the artist.

Claim 10 adds the additional requirement that the video image from claim 1 is "encoded according to a Moving Pictures Experts Group (MPEG) standard." Music Choice provided a Rebuttal Expert Report, and this report stated that "[t]he '245 Patent provides a solution to problems that existed in dealing with graphics and text at the time of the invention." (Dkt. No. 184-3 at ¶ 19.) The report states that

> it consumes significantly less computing power and network bandwidth if a computer at the headend generates a video image,

> such as a combination of album art and the title of the song, and then uses its digital video infrastructure to send the image, as Music Choice recognized in developing the systems and methods described in the '245 Patent. In effect, it creates a single graphical image and then converts it to a video stream. Music Choice recognized that it was best to use MPEG formatting for the video stream.

(*Id*. at ¶ 20.) Music Choice's expert suggests that the approach of sending the art and the text separately and having every set-top box render an image locally was counter-intuitive. (*Id*. at ¶ 21.) Music Choice's expert states that, by generating an MPEG image at the headend, the claimed invention is able to produce higher picture quality, lower overall cost, and backward compatibility to older models. (*Id*. at ¶ 22.)

### b. Analysis

The claims at issue within the '245 Patent are directed to a specific method and system for more efficiently collecting, transmitting, and encoding certain information or data so that it may be presented on a display device alongside an audio music stream. Because the Court resolves this issue at *Alice* Step One, it is unnecessary to proceed to *Alice* Step Two.

The Federal Circuit's *DDR Holdings* decision is informative. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In that case, the Federal Circuit recognized that the claims at issue "address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." *Id*. The Federal Circuit stated that the claimed invention retained the visitors on the website and stated that "rather than instantly losing visitors to the third-party's website, the host website can instead send its visitors to a web page on the outsource provider's server that 1) incorporates 'look and feel' elements from the host website, and 2) provides visitors with the opportunity to purchase products from the third-party merchant without actually entering that merchant's website." *Id*. at

1257–58. The Federal Circuit concluded that the claims at issue stood apart from ineligible software-based claims in previous cases because the claims at issue

> do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id.* at 1257.

Furthermore, the Federal Circuit's *Enfish* decision addressed the patent eligibility of software-based inventions, and the court stated that the critical inquiry there was "whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.") (citing *Enfish*, 822 F.3d at 1336). The Court noted that the vast majority of previous decisions where claimed inventions were determined to be unpatentable involved the second category — where computers were merely invoked as a tool — making it necessary to proceed to *Alice* Step Two. *Enfish*, 822 F.3d at 1336. The *Enfish* court determined that the plain focus of the claims at issue were on improvements to the computer functionality itself and that they were "directed to a specific improvement to the way computers operate. . . ." *Id*. Because of this, the Court found that the claims were "not directed to an abstract idea within the meaning of *Alice*." *Id*.

The claimed inventions are directed to a specific approach for more efficiently collecting, transmitting, and encoding certain information or data so that it may be presented on a display device alongside an audio music stream. The method steps within independent claim 1 and dependent claim 10 require transmitting data so that the data may eventually be presented on the display device. *Id*. at cl. 1 ("transmitting, from a first transmission system" and "transmitting a data packet"). While the final clause of claim 1 discusses the information that is presented in the generated video image, the primary focus of the claim is on how the information is collected, transmitted, and encoded. *Id*. The abstract states that the '245 Patent involves "[a] system and method for *providing* an interactive, visual complement to one or more audio programs." *Id*. at [57] (emphasis added). Similarly, the preamble of independent claim 1, which claim 10 depends upon, states "a method for *providing* a visual complement to an audio stream." *Id*. at claim 1 (emphasis added). The language within the specification, especially the detailed description of the preferred embodiments, focuses how the data is collected, transmitted, and encoded so that it may be presented as a video image on the display. *See id*. at 3:54–15:60. For example, Figure 1 and the corresponding portions of the specification focus on how audio content and video content are obtained and how that content is transferred to other systems such as the first transmission system or second transmission system so that the content may eventually be displayed on the screen. *Id*. at fig. 1, 3:54–6:15.

The Court concludes that the claimed inventions here are directed to a specific technical solution to a technical problem that results in improvements to the functionality of the technology itself, similar to the claimed inventions in *DDR Holdings* and *Enfish*. The claimed inventions provide technical solutions to technical problems. The patent states that "in conventional music broadcast systems, the TV screen is underutilized and the consumer's overall enjoyment of the

system is limited." '245 Patent at 1:41–46. The patent states that "[w]hat is desired, therefore, is a system to overcome this and other disadvantages of conventional music systems." *Id*. at 1:47–48. The claimed inventions provide a method and system that provide visual complements to audio files in improved ways. Plaintiff's expert, Dr. Russ, states that:

> it consumes significantly less computing power and network bandwidth if a computer at the headend generates a video image, such as a combination of album art and the title of the song, and then uses its digital video infrastructure to send the image, as Music Choice recognized in developing the systems and methods described in the '245 Patent. In effect, it creates a single graphical image and then converts it to a video stream. Music Choice recognized that it was best to use MPEG formatting for the video stream.

(Dkt. No. 184-3 at ¶ 20.) Further, Dr. Russ states that set-top boxes had limited ability to display a graphical image, such as a JPEG, and that any text overlay, if even possible, would be very plain and unattractive. (*Id*. at ¶ 22.) Dr. Russ also stated that, by generating an MPEG image at the headend, the claimed inventions were able to produce higher picture quality, lower overall cost, and backward compatibility to older models. (*Id*.) Stingray does not challenge the merits of Dr. Russ's statements or show that Dr. Russ's description of the claimed inventions is inaccurate.

In light of the discussion above, the Court concludes that the claimed inventions are not directed to applying an abstract idea on a computer wherein the computer is merely being invoked as a tool. Instead, the claims provide a specific improvement to the way the computer technology operates similar to the claimed invention of *Enfish*. The Court therefore concludes that the claimed inventions are not directed to an abstract idea at *Alice* Step One. Instead, the Court concludes that claimed inventions provide a specific method and system for more efficiently collecting, transmitting, and encoding certain information or data so that it may be presented on a display device alongside an audio music stream.

Stingray cites various Federal Circuit cases and argues that the claims do not possess "limiting detail that confines the claim to a particular solution to an identified problem." (Dkt. No. 180 at 14 (citing *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1268 (Fed. Cir. 2016)).) In *Amazon*, the Federal Circuit concluded that the claimed invention was directed to the abstract idea of "delivering user-selected media content to portable devices" at *Alice* Step One. *Amazon*, 838 F.3d at 1269. The court stated that "the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id*. The court also stated that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id*.

However, the Court concludes that these claims are more analogous to the claims at issue in *McRO, Inc. v. Bandai Namco Games Am. Inc.,* which the Federal Circuit determined were not invalid under § 101. 837 F.3d 1299, 1316 (Fed. Cir. 2016). In *McRO*, the court noted that the concern underlying the exceptions to § 101 is preemption. *Id*. at 1315. The court noted that the concern was "whether the claimed genus of rules preempts all techniques for automating 3–D animation that rely on rules." *Id*. The Court ultimately determined that the claims at issue possessed specified structure of the claimed rules. *Id*. The court stated that "the specific structure of the claimed rules would prevent broad preemption of all rules-based means of automating lip synchronization, unless the limits of the rules themselves are broad enough to cover all possible approaches." *Id*. The court also noted that "[t]here has been no showing that any rules-based lip-synchronization process must use rules with the specifically claimed characteristics." *Id*.

Like the claims presented in *McRO*, the claims at issue here possess specific limitations that limit the preemptive scope of the claims. The claims require that the video image be encoded

using MPEG encoding, which is more than a trivial limitation here. (*See* Dkt. No. 184-5 at 15–20 (the PTAB's denial of Stingray's IPR petition, which largely focuses on the MPEG encoding limitation).). The claims require the use of identifiers being sent and utilized to generate a data packet from a selected song. The claims also require that the receiving system automatically outputs the video image for receipt by the display device and that the display device is configured to display the specified image to a user without the user having to select a menu item requesting the image. Based on these limitations and other limitations present within the claims, the Court concludes that the claims provide "limiting detail that confines the claim to a particular solution to an identified problem," making *Amazon* and the other cases cited by Stingray distinguishable.

Further, as was the case in *McRO*, Stingray has not shown that the specified limitations would broadly preempt related technology here. In fact, Stingray's damages expert assumes that the '245 Patent "does not cover all methods of distributing album art." (Dkt. No. 184-8 at ¶ 15 ("It is my understanding that the scope of the asserted '245 Patent claims is limited to the presentation of a visual complement to audio, such as album art, that is distributed using the MPEG protocol through a cable or satellite network. I have been told that the '245 Patent does not cover all methods of distributing album art. For example, the '245 Patent does not relate to the concept of distributing album art through an over-the-top (OTT) distribution network.").)

Viewing the character of the claims as a whole, the Court concludes that the claims are not directed to an abstract idea — they are instead directed to a technical solution to a technical problem. The Court therefore recommends that Music Choice's motion be **GRANTED** and that Stingray's motion be **DENIED** at *Alice* Step One. Because the Court reaches this conclusion, it is unnecessary to proceed to *Alice* Step Two.

## III. '025 AND '045 PATENT CLAIMS

The Court also concludes that the claims at issue in the '025 and '045 Patents are not directed to an abstract idea at *Alice* Step One, making it unnecessary to proceed to *Alice* Step Two.

### a. Background

The '025 Patent and '045 Patent are related, and they share a common specification. '045 Patent at [63]; Dkt. No. 180 at 3. Both patents are entitled "Systems and methods for providing a broadcast entertainment service and an on-demand entertainment service." '025 Patent at [54]; '045 Patent at [54]. The abstracts of the '025 Patent and '045 Patent both state that "[t]he present invention provides systems and methods for, in some cases, supplementing a broadcast media service with an on-demand and personalized media service." '025 Patent at [57]; '045 Patent at [57]. Claim 8 is the only remaining asserted claim of the '025 Patent, and it is an independent claim. Claim 8 of the '025 Patent requires

> 8. A video-on-demand method comprising,
> receiving at an on-demand system information indicating that a user desires to view a selected video;
> creating a playlist, wherein the playlist includes a plurality of media assets, including one media asset corresponding to the selected video;
> transmitting to a client system a media asset listed in the playlist;
> transmitting to the client system a video identifier while transmitting to the client system the media asset;
> while the client system is playing the media asset, (a) enabling a user of the client system to indicate that the user desires to view the video identified by the video identifier and (b) receiving an indication that the user desires to view the video;
> receiving from the client system a message including the video identifier, wherein the message is received while at least a portion of the media asset is being transmitted to the client system; and
> in response to receiving the message from the client system, ceasing transmitting the media asset and transmitting the video identified by the video identifier.

For the asserted claims of the '045 Patent, claim 16 is an independent claim, claim 17 and 19 are dependent claims that depend upon claim 16, and claim 20 is a dependent claim that depends

upon claim 19. For the purposes of resolving these motions, the Court concludes that independent claim 16 is representative of the other asserted claims within the '045 Patent. Claim 16 requires

> 16. A video-on-demand system, the video on demand system comprising:
>     a transmitter;
>     a receiver; and
>     a computer system coupled to the transmitter and the receiver, wherein the computer system is configured to perform a method comprising:
>         selecting a song for one of a plurality of music channels, the one of the plurality of music channels being associated with a genre of music;
>         transmitting simultaneously to a plurality of client systems audio data corresponding to the selected song, wherein each of the plurality of client systems is configured to use the audio data to play the song so that each user of each of the plurality of client systems can listen to the song, and the plurality of client systems includes a first client system and a second client system;
>         while transmitting the audio data to the plurality of client systems, transmitting to the first client system a video identifier identifying a video;
>         while the first client system is playing the song enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier, and then in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier.

### b. Analysis

Stingray asserts that the claims are directed to "the abstract idea of selecting and watching videos." (Dkt. No. 180 at 17.) Stingray argues that the claims "function in the same way that individuals have been selecting and watching movies at home for decades" by having "a user selecting a video and being presented with that video along with other similar videos" and then "playing the selected video." (*Id.* at 17.) Stingray argues that the asserted claim of the '025 patent includes an "additional, known and non-conventional video-on-demand step of allowing the user to select and play a different video while watching the first video" and that the asserted claims of the '045 Patent merely allow the user to select a video while listening to a song. (*Id.*) Stingray also asserts that the claims merely provide methods of organizing human activity and transmitting

information. (*Id*. at 18.) Stingray argues that, like the claims that the Federal Circuit determined to be directed to an abstract idea at *Alice* Step One in *Intellectual Ventures I LLC v. Capital One Fin. Corp.* and *Elec. Power Grp.*, "the asserted claims of the on-demand patents merely include the steps of collecting information and displaying a result based on the collected information." (*Id*. at 20 (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d at 1340; *Elec. Power Grp.*, 830 F.3d at 1353).) Stingray also asserts that the Federal Circuit has held that simply linking two features together is insufficient to "impart patent-eligibility where, as here, the 'linking' claim limitations 'call[] for the desired result' but 'do[] not attempt to claim any method for achieving that result.'" (*Id*. at 21 (citing *Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1244 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1344–45 (Fed. Cir. 2015)).)

Music Choice asserts that the claims are directed to "particularized systems and methods for directly linking from one type of content, such as a linear audio channel (*e.g*., a music TV channel that, like a radio station, plays selected songs in an order and a timetable set by the broadcaster) or items on a playlist, to video-on-demand content while continuing to view and listen to the initial content." (Dkt. No. 184 at 21.) Music Choice argues that the claimed inventions "address technical problems particularly associated with on-demand television technology and the claimed linking and other features are an improvement over prior art systems that did not offer them." (Dkt. No. 184 at 21.) Music Choice also argues that the asserted claims of the '025 and '045 Patents "overcome the limitations of existing systems, which required subscribers to disengage from watching existing broadcast or other content in order to browse and access on-demand video content. . . ." (*Id*. at 5, 22 (citing Dkt. No. 184-3 at ¶¶ 33–35).)

Viewing the character of the claims as a whole, the Court concludes that the claimed inventions within the asserted claims of the '025 and '045 Patents are not directed to an abstract

idea at *Alice* Step One. As Music Choice argued, the asserted claims are directed to "particularized systems and methods for directly linking from one type of content, such as a linear audio channel (*e.g.*, a music TV channel that, like a radio station, plays selected songs in an order and a timetable set by the broadcaster) or items on a playlist, to video-on-demand content while continuing to view and listen to the initial content."

The claim language supports this interpretation of what the claims are directed to. The claims possess specific limitations regarding how and when video identifiers are transmitted. Claim 8 of the '025 Patent requires "transmitting to the client system a video identifier while transmitting to the client system the media asset." Claim 8 also requires "enabling a user of the client system to indicate that the user desires to view the video identified by the video identifier. . . ." Claim 8 also requires "receiving from the client system a message including the video identifier. . . ." These limitations show that the claim is not directed to simply selecting and viewing videos. Instead, the claim is directed to particular way of linking from one media asset to a video.

Preemption is a key concern in the § 101 inquiry, *McRO*, 837 F.3d at 1315, but the Court is satisfied that the claimed inventions at issue within the '025 and '045 Patents possess specific limitations that do not preempt all potential means for linking. This is shown by the limitations discussed in the previous paragraph. Claim 8 of the '025 Patent possesses specific limitations for sending a video identifier at a specific time (while the media asset is being transmitted) to a specific system (the client system). The claim also requires the creation of a playlist and the transmission of an asset listed in that playlist. The claim also requires that, upon the receipt of a message with the video identifier, the transmission of the media asset is ceased and the transmission of that the

video identified by the video identifier begins. This claim possesses significant limitations and does not preempt all forms of linking.

With respect to this analysis, the claim language for Claim 16 of the '045 Patent is substantially similar to the claim language in Claim 8 of the '025 Patent. Claim 16 of the '045 Patent is a system claim rather than a method claim. However, claim 16 of the '045 Patent requires a computer system that is configured to perform a method similar to the method performed in claim 8 of the '025 Patent. Claim 16 of the '045 Patent requires that the computer system be configured to perform the method step of "transmitting to the first client system a video identifier identifying a video" while "transmitting the audio data to the plurality of client systems. . . ." Claim 16 of the '045 Patent similarly requires limitations such as "while the first client system is playing the song enabling the user of the first client system to indicate that the user desires to view the video identified by the video identifier" and "in response to receiving from the first client system a message comprising information indicating that the user desires to view the video identified by the video identifier, transmitting to the first client system video data corresponding to the video identified by the video identifier."

The claimed inventions here are similar to the claimed inventions that the Federal Circuit determined to be eligible for patentability in *DDR Holdings*. *See* 773 F.3d at 1257. In *DDR Holdings*, the previous prior art systems allowed third-party merchants to lure the visitor traffic away from the host website because visitors would be taken to the third-party merchant's website when they clicked on the merchant's advertisement on the host site. *Id*. at 1248. The court recognized that the claims at issue "address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a

hyperlink." *Id.* at 1257. The Federal Circuit recognized that the claimed invention retained the visitors on the website and stated that "rather than instantly losing visitors to the third-party's website, the host website can instead send its visitors to a web page on the outsource provider's server that 1) incorporates 'look and feel' elements from the host website, and 2) provides visitors with the opportunity to purchase products from the third-party merchant without actually entering that merchant's website." *Id*. at 1257–58. The Federal Circuit concluded that the claims at issue stood apart from ineligible software-based claims in previous cases because the claims at issue

> do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id.* at 1257.

Like the claimed inventions in *DDR Holdings*, the claimed inventions here are necessarily rooted in computer-based systems to provide a technical solution to a technical problem with those systems. Plaintiff's expert states that cable systems were originally optimized for one-way broadcast services. (Dkt. No. 184-3 at ¶ 33.) He states that two-way broadcast services were eventually developed that permitted video-on-demand. (*Id*. at ¶ 34.) However, he states that "accessing video-on-demand typically required that set-top boxes download and run a special-purpose 'VOD application,' steering subscribers away from broadcast content in order to enable subscribers to browse video titles." (*Id*.) The claimed invention solves these problems by providing a specific approach for linking from a media asset or a song to a video. The claimed inventions allow the user to select on-demand videos in a way that does not require them to disengage from their current content. This problem, preventing users from disengaging from content, is similar to the problem addressed by the claimed invention in *DDR Holdings*.

Stingray's characterization of the claimed invention as merely being related to selecting and watching videos overgeneralizes the claimed inventions. The court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (omission in original). The claim possesses specific limitations that describe how identifiers are transmitted at specific times to specific systems to enable a user to quickly select a video. Characterizing the claims as merely selecting and watching videos ignores limitations within the claims.

While Stingray argues that other courts have determined linking features to be abstract, those cases are distinguishable. Stingray cites to *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) and *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1344–45 (Fed. Cir. 2015). In both of those cases, the claims merely described the function of linking at a high level without any concrete limitations for how that linking would be accomplished. For example, the Federal Circuit stated that the claims at issue in *Apple* "require[d] that the second menu, after being modified, can be linked to a specific customer at a specific table." *Apple*, 842 F.3d at 1244; U.S. Patent No. 6,982,733 (showing, in the patent at issue in *Apple*, that asserted claim 3, which was one of the claims at issue, required that "the modified second menu ***can be linked*** to a specific customer at a specific table directly from the graphical user interface of a hand-held device") (emphasis added). The *Apple* court stated that this limitation called "for the desired result of associating a customer's order with said customer, and [did] not attempt to claim any method for achieving that result." *Id*. Here, the claims utilize identifiers, sending them at specific times that enable linking to occur.[2] Further, Music Choice states that "[t]he specifications of the

---

[2] As stated above, Claim 8 of the '025 Patent requires "transmitting to the client system a video identifier while transmitting to the client system the media asset," "enabling a user of the client system to indicate that the user desires to view the video identified by the video identifier," and "receiving from the client system a message including the video identifier. . . ."

VOD patents describe six different flow/process charts (Figs. 2, 5, 7, 11, 17, 20) and three block diagrams of the system (Figs. 1, 4, 21) reflecting variations in the technical requirements necessary to achieve the claimed linking functionality." Thus, rather than merely stating a requirement of "linking" in only functional terms or in a way that preempts all potential means for linking, the claims possess specific limitations as to how the linking is performed. These limitations make Stingray's cited cases distinguishable.

## IV.    CONCLUSION

The Court therefore recommends that summary judgment be **GRANTED** in favor of Music Choice rejecting the defense under §101 as the claimed inventions are not directed to an abstract idea. The Court also recommends that Stingray's motion for judgment on the pleadings be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **BY NO LATER THAN DECEMBER 2, 2019** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation **must be filed** in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 22nd day of November, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE